THE STATE INSURANCE COMPANY OF DES MOINES, IOWA, PLAINTIFF IN ERROR, V. JOHN JORDAN, DEFENDANT IN ERROR.

**Insurance:** CONDITION OF POLICY: ACTION ON POLICY: TRIAL: EVIDENCE. In an action on a policy of insurance, where the policy contained a clause in the following words, "and it is expressly understood and agreed by the parties hereto that application and survey No. 184,108, made by the assured, is hereby made a part of this policy and a warranty, on the part of the assured, and that this policy is issued upon the faith of the statements in said application and survey, as they thus appear, in writing therein *only*," and the application endorsed on the said policy contained the following: "8. Chimneys what kind? Galvanized iron cap. * * * 17. Granary, its size, age, condition, and present cash value? * * * 18. Its direction and distance from house? N. W. 100 feet. * * * 22. Is it incumbered in any way: if so, how much and when due? The entire incumbrance none." On the trial there was evidence on the part of the defendant tending to prove: 1, That there was no galvanized iron cap on the chimney or roof; 2, That the granary was only forty-six feet distant from the house; 3, That at the date of the application and insurance there was a valid and subsisting mortgage on the insured premises for $500. At the close of the evidence, the plaintiff moved the court to strike from the record, and exclude from the jury, all the testimony

of the defendant with reference to the incumbrances upon the premises described in the policy of insurance, and all the testimony with reference to the galvanized iron cap upon the building, and all the testimony with reference to the distance of the house from the granary, which motion was sustained by the court. *Held*, Error, and a new trial granted.

ERROR to the district court for Madison county. Tried below before POWERS, J.

*Allen & Robinson* and *Higgins & Garlow*, for plaintiff in error, cited: *McCormack v. Molburg*, 43 Iowa, 561. 1 Wood on Fire Ins., 349, Secs. 150, 157, 162, and 168. *Southern Mut. Ins. Co. v. Yates*, 28 Gratt. (Va.), 585. *Falis v. Conway, etc., Ins. Co.*, 7 Allen (Mass.), 46.

*A. N. Childs* and *Brome, White & Mapes*, for defendant in error.

COBB, J.

This is an action on a policy of insurance. The petition, after the formal part, alleges that, on the 9th day of February, 1885, the plaintiff was the owner of a certain quarter section of land, describing the same, in the county of Madison and state of Nebraska; that defendant, on said day, in consideration of the sum of $14.90 paid by the plaintiff to defendant as a premium, executed and delivered to the plaintiff the policy of insurance, a copy of which is attached to and made a part of the petition, and marked exhibit A; that the 8th day of September, 1886, the dwelling-house insured by said policy, together with all the beds and bedding therein, all of the wearing apparel therein, all of the household furniture and family stores and provisions therein, together with the grain contained therein, were burned and wholly destroyed by fire; that the value of said property, at the time it was so destroyed by fire, was as follows: Dwelling-house, $250;

beds and bedding, $25; wearing apparel, $20; household furniture, $50; family stores and provisions, $1.20; sewing machine, $20; frame granary, $100; grain contained therein, $22; that said fire did not originate by any act, design, or procurement on the part of the plaintiff; that at the time of said insurance, and subsequent thereto, there was and has been no additional insurance upon said premises; nor has the title or occupancy thereof been changed, or the hazard increased; nor has the building at any time been vacant. And the insured, at the time the house burned, used all possible efforts to keep the property so insured safely protected against fires that may originate or start on prairies, and used all possible efforts to save the property so insured, when on fire; that on the 15th day of October, 1886, the plaintiff gave said defendant due notice and proof of said fire and loss, and has duly performed, on his part, all of the conditions of said policy of insurance; that said dwelling-house and contents, and said granary and contents, were worth $438$\frac{20}{100}$ when destroyed by fire; that on the 15th day of October, 1886, the plaintiff demanded of said defendant the payment of said insurance; no part thereof has been paid, and there is now due from the defendant to the plaintiff on said policy the sum of $438$\frac{20}{100}$, with interest upon such sum from the 15th day of October, 1886, with costs of suit.

The copy of policy attached to said petition as exhibit A, sets out that, "by said policy and in consideration that John Jordan, of Norfolk, made his note or obligation to the State Insurance Company for fourteen and $\frac{70}{100}$ dollars, agreeing to pay the same according to the terms thereof, said insurance company do insure John Jordan against loss or damage by fire and lightning, to the amount of seven hundred and thirty-five dollars, in the property hereinafter described, namely:

On his dwelling-house (value of house, $250).........$200
On beds and bedding, while therein.....................  25

On wearing apparel, while therein........................ 20

On household furniture, while therein .................. 50

On family stores and provisions, while therein......... 20

On sewing machine, while therein........................ 20

On reaper and harvester on premises..................... 200

On grain in buildings on premises, or in stack in the
    field on plowed land on the premises (except
    flax) ..................................................... 100

On frame granary, value $140............................. 100

All situated on the S. ½ of N. E. ¼, and N. ½ of the S.
E. ¼ of Sec. 11, T. 24, R. 2 west, county of Madison,
state of Nebraska. Term five years. And it is hereby
expressly agreed by the parties hereto that application and
survey No. 184,108, made by the assured, is hereby
made a part of this policy, and a warranty on the part of
the assured, and that this policy is issued upon the faith
of the statement in said application and survey, as they
thus appear in writing therein only. Now, therefore, the
said company does promise and agree (subject to the con-
ditions and stipulations herein and endorsed hereon, which
constitute the basis of this insurance) to make good unto
the assured, his executors and administrators, all such
immediate loss or damage, not exceeding in amount the
sum or sums insured on each, nor the interest of the as-
sured in the property, as shall happen by fire or lightning
during the said term, to-wit, from the 2d day of February,
one thousand eight hundred and eighty-five, at twelve
o'clock at noon, unto the 2d day of February, one thou-
sand eight hundred and ninety, at 12 o'clock at noon.
    * * * And any other insurance, valid or invalid,
or any incumbrance upon any of the property hereby in-
sured, existing at the date of this policy, not made known
in the application, or any subsequent incumbrance by
mortgages, contracts of sale, or otherwise, is imposed, or
title or occupancy changed, or hazard increased, without
the written consent of the secretary of the company, or if

the building becomes vacant, this policy shall be void. Any false statement in the application shall make this policy void.   *   *   *   And this policy is made and accepted by the assured on the above conditions and stipulations hereto annexed, which are to be used and resorted to in order to explain the rights and obligations of the parties hereto, and no part of this contract can be waived, except in writing, signed by the secretary of the company."

"Endorsed as follows: Application of John Jordan *   *   *

"Q. 1.   Is your house of stone?

"A.   Frame.
    *      *      *      *      *      *      *

"Q.   Chimneys, what kind?

"A.   Galvanized iron cap.

"Q.   Where do they start?

"A.   Nailed on roof.
    *      *      *      *      *      *      *

"Q.  Granary—its size, age, condition, and present cash value?

"A.   It is twelve by sixteen feet, good condition, nine years old.

"Q.   Its direction and distance from the house?

"A.   N. W.   100 feet.
    *      *      *      *      *      *      *

"Q.   State number of acres of land you own on which the property to be insured is situated, and its value?

"A.   One hundred and sixty acres, worth per acre $10.
    *      *      *      *      *      *      *

"Q.   Is it incumbered in any way?  If so, how much, and when due?

"A.   The entire incumbrance is $ none.
    *      *      *      *      *      *      *

"Having read the foregoing application, and fully understanding its contents, I warrant it to contain a full and true description and statement of the condition, situation,

value, occupancy, and title of the property hereby proposed
to be insured in the State Insurance Company of Des
Moines, and I warrant the answers to each of the forego-
ing questions to be true. No liability of the company
shall attach until this application has been actually ap-
proved by the secretary."

The answer of the defendant admits the formal allega-
tions of the petition, denies all knowledge of the loss, and
alleges that, at the time the policy was issued, the plaintiff
made his written application therefor; that in said appli-
cation he was asked the following questions: "Is the
property incumbered in any way; if so, how much, and
when due?" To which inquiry said plaintiff answered:
"The entire incumbrance is none." And defendant says
that said answer to said inquiry was false and untrue, for
at that time the said real estate upon which said property
was situated was incumbered in the sum of $500, by a
mortgage which was executed prior thereto, and defendant
says that, by reason of said false and untrue answer, so
made in said policy, said policy by its terms was void,
and the defendant was not liable thereon.

Q. "Chimneys, what kind?" To which plaintiff an-
swered, "Galvanized iron cap," which answer was false
and untrue, for not at that time, and no time thereafter,
was there a "galvanized iron cap," as stated by plaintiff;
and defendant says that, by reason of said false and untrue
answer, so made in said application, the policy by its terms
was void, and the defendant was never liable thereon.

Q. "Granary, its direction and distance from the
house?" To which plaintiff answered, "N. W. 100 feet."
Defendant says that said answer to said question was false
and untrue, and says that said granary was not of the dis-
tance of 100 feet from the house, and defendant says that,
by reason of said false and untrue answer so made in the
application and policy, said policy by its terms was void,
and defendant was never liable thereon, etc.

To which answer the plaintiff made reply, as follows: "The plaintiff, replying to the answer of the defendant herein, denies each and every allegation in said answer contained. And further replying, the plaintiff alleges that said plaintiff is an illiterate person, and is wholly unable to read or write either written or printed matter, and knew nothing of the contents of said written application, and with reference to said application plaintiff relied wholly upon what defendant's agent said as being true, and alleges that no such questions as stated in said defendant's answer was either asked by defendant's agent or answered by the plaintiff at the time of procuring such insurance, or at any other time."

There was a trial to a jury, with a verdict and judgment for the plaintiff.

The defendant brings the cause to this court on error, and assigns the following errors:

"The district court erred in sustaining the following motion of the defendant in error, at the conclusion of the evidence of the plaintiff in error, on the trial of said cause, to-wit: 'At this point the plaintiff moves the court to strike from the record and exclude from the jury all the testimony of the defendant with reference to the incumbrance upon the premises described in the policy of insurance, and all the testimony with reference to the galvanized iron cap upon the building, and all the testimony with reference to the distance of the house from the granary, for the reason that it is incompetent, irrelevant, and immaterial.' Motion sustained by the court.

"2. The district court erred in refusing to give to the jury, and require them to answer, special findings one, two, four, five, six, and seven asked by plaintiff.    *    *    *

"3. The district court erred in refusing to give to the jury instructions one, two, three, four, five, six, seven, and nine, and each of them, asked by the plaintiff in error and refused by the court. .

"4. The district court erred in giving to the jury instruction one, asked by the defendant in error.

"5. The district court erred in giving to the jury paragraphs one, two, three, four, five, six, and seven of the court's charge to the jury, and each paragraph thereof," etc. With other formal assignments.

From the bill of exceptions, it appears that, upon opening his case and evidence to the jury, the plaintiff introduced in evidence the original policy of insurance described in, and a copy of which was attached to, the petition, and called the special attention of the court that he introduced in evidence, as well the indorsements upon the policy, including the copy of the original application, as the face of the policy itself; which was received in evidence.

After the evidence was closed on the part of the plaintiff, the defendant called the plaintiff as a witness on its behalf, who testified that, at the time he signed the application for insurance and received the policy, there was a mortgage of $500 on the land upon which the insured buildings were situated, to Mr. Matheson, which was still unpaid at the time of the trial. There was evidence on the trial, on the part of the defendant, tending to prove that the distance from the house described in the policy and the granary, also therein described, was only sixteen steps, or forty-six feet. There was also evidence tending to prove that, at the time of making the application for insurance, there was not, nor was there at any time before the destruction of the building, any galvanized iron cap connected with the stove pipe or chimney, as represented in the application.

Upon the defendant's closing its evidence and resting its case, the plaintiff moved the court to strike from the record, and exclude from the jury, all the testimony of the defendant with reference to the incumbrance upon the premises, and all the evidence with reference to the galvanized iron cap upon the building, and all the testimony with reference to the distance of the house from the gran-

ary, for the reason that it is incompetent and immaterial, which motion was sustained by the court.

The cause was not argued at the bar of this court. It was submitted by stipulation, in which counsel for defendant in error reserved the right to present a printed brief at any time .within fifteen days from the date of submission, but of which right they have not availed themselves. The court is therefore without the benefit of their views as to the ground upon which the above order can be justified.

The policy, with the copy of the application, including the answers to the several questions therein contained, and an express warranty of their truthfulness endorsed thereon, over the signature of the assured, plaintiff, was in evidence before the court, and it was competent for the defendant to attack the truth of any of the representations or statements of fact contained in the application; it had pursued that course both by pleading and proof, and was entitled to the benefit of it before the jury, while the pleadings remained as they are, and the policy with its endorsements remained before the jury in evidence on the part of the plaintiff.

As a court of review, we must take up and examine the issues as they are presented by the parties, and need not, even if we may, consider whether they might have been presented so as to have been more favorable to either side. As the pleadings stand, and as the documentary evidence on the part of the plaintiff stands, it is immaterial whether the plaintiff knew the exact character of the statements contained in the application or not; they must be taken as expressing his side of the contract of insurance which he seeks to enforce. But were this not the case, and were the pleadings such as to place in issue the execution by the plaintiff of the application .for insurance, then there is evidence on the part of the defendant tending to prove, as well as evidence on the part of the plaintiff tending to disprove, that the application for insurance, including the

questions and answers, were truly read to the plaintiff, and knowingly executed by him. Even in this view of the case, it would present a question for the jury, not to be taken from them by the court. Where, in a case like this, the application is expressly referred to in the body of the policy, and made a part of the same, and a warranty on the part of the assured, and the policy therein declared to be "issued upon the faith of the statements in said application and survey as they thus appear in writing therein only," and in said application there is a statement that there is no incumbrance upon the land upon which the insured buildings are situated, the fact that there was, at the time of the making of such application and insurance, a valid and existing mortgage upon such land, is a bar to a recovery upon such policy. See authorities cited in Digest of the Law of Insurance, by Berryman, p. 623. Also, Id., p. 115.

The district court, therefore, erred in taking the evidence of the plaintiff himself, when called as a witness on the part of the defendant, and which clearly proved that, at the date of the application and policy, the land on which the insured buildings were situated was incumbered by mortgage, from the consideration of the jury in the disposition of the case.

Having reached the conclusion that there must be a new trial for the above error on the part of. the trial court, I deem it unnecessary to examine or pass upon the other errors assigned. Presuming that before another trial the pleadings will probably be remodeled, the occasion for most of the alleged errors will scarcely occur again.

The judgment of the district court is reversed, and the cause remanded to that court for further proceedings in accordance with law.

REVERSED AND REMANDED.

THE other judges concur.